IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| GEOVANI WILBER VASQUEZ-RIVERA, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 3:15cv433–HEH |
| JEH JOHNSON, *et al.*, | ) ) | |
| Respondents. | ) ) | |

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2241 Petition)

This matter is before the Court pursuant to Petitioner Geovani Wilber Vasquez-Rivera's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1.) Respondents have filed a response. (ECF No. 12.)

In the § 2241 Petition, Petitioner, an alien detainee in the custody of the United States Immigration and Customs Enforcement ("ICE"), asserts that he "has been detained longer than the six month period which is presumptively valid under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)" and should therefore be released from custody. (§ 2241 Pet. 1.) Respondents assert that the Court lacks subject matter jurisdiction over the § 2241 Petition because no final order of removal has been entered in Petitioner's deportation proceedings. (Resp. 7–11.) Respondents further argue, in the alternative, that Petitioner is not entitled to relief under *Zadvydas*. (*Id.* at 11–13.) For the following reasons, Petitioner's § 2241 Petition (ECF No. 1) will be denied.

## I. PROCEDURAL HISTORY

Petitioner is a native and citizen of El Salvador. (§ 2241 Pet. ¶ 3.) He was lawfully admitted to the United States for permanent residence on December 3, 2005. (*Id.*) On August 4, 2010, Petitioner was convicted of Misdemeanor Received Stolen Goods in the General District Court for Prince William County. (Resp. Ex. 3 ("Teamer Decl.") ¶ 6, ECF No. 12-3.) He was sentenced to 90 days of imprisonment. (*Id.*) On June 16, 2011, Petitioner was convicted of Grand Larceny in the Circuit Court for the City of Virginia Beach. (*Id.* ¶ 7.) He was sentenced to 15 years of imprisonment. (*Id.*)

ICE brought Petitioner into custody on January 21, 2014. (*Id.* ¶ 8.) On January 23, 2014, the Department of Homeland Security ("DHS") filed a Notice to Appear, charging Petitioner as a removable alien under the Immigration and Nationality Act. (*Id.* ¶ 9.) During his initial interview, Petitioner "revealed that he is an active MS-13 gang member." (*Id.* ¶ 11.)

On February 20, 2014, Petitioner appeared via video for his initial hearing. (*Id.* ¶ 12.) At that time, Petitioner's counsel "filed a Form I-589, Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture." (*Id.*)[1] The Immigration Judge ("IJ") set a hearing on Petitioner's request for deferral of removal

---

[1] An alien seeking relief under the Convention Against Torture must demonstrate that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Petitioner has asserted that he would more likely than not be tortured if removed to El Salvador because of his associations with MS-13. (Resp. Ex. 1 ("Sept. 23, 2014 IJ Decision"), at 5.)

2

under the Convention Against Torture ("CAT") for April 2014. (*Id.*)[2] On April 7, 2014, the DHS lodged an additional charge of removability, on the grounds that Petitioner had been "convicted of two crimes involving moral turpitude after the date of his admission." (*Id.* ¶ 13.)

On April 10, 2014, Petitioner's attorney withdrew over an objection by DHS. (*Id.* ¶ 14.) The IJ continued the matter for Petitioner to prepare his case. (*Id.*) After new counsel appeared for Petitioner, the IJ scheduled the merits hearing for June 5, 2014. (*Id.* ¶ 15.) On May 29, 2014, Petitioner's counsel requested a continuance in order to have time to retain a new expert. (*Id.* ¶ 16.) The IJ granted the motion that same day. (*Id.*)

On August 21, 2014, the parties appeared before the IJ for the merits hearing. (*Id.* ¶ 17.) On September 23, 2014, the IJ issued a written decision denying Petitioner's application for relief under the CAT and ordering that Petitioner be removed to El Salvador. (*Id.* ¶ 18; *see also* Resp. Ex. 1 ("Sept. 23, 2014 IJ Decision"), at 11.) Petitioner, through counsel, filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"). (Teamer Decl. ¶ 19.) On December 18, 2014, the BIA issued a written decision, remanding the matter to the IJ "for a new written decision with additional factual findings and analysis." (*Id.* ¶ 21; *see also* Resp. Ex. 5 ("Dec. 18, 2014 BIA Decision"), at 4.)

On May 7, 2015, the parties appeared before a different IJ. (Teamer Decl. ¶ 29.) However, that IJ "notified the parties that he was not the proper judge to hear the case, since the BIA remanded for a written decision by the previous judge." (*Id.*) That IJ told

---

[2] Because of Petitioner's grand larceny conviction, he was barred from relief in the form of withholding of removal. (Teamer Decl. ¶ 12.)

3

the parties that he had given Petitioner's file to the correct IJ. (*Id.*) On June 3, 2015, the first IJ issued a written decision denying Petitioner's application for deferral of removal under the CAT and ordering that he be removed to El Salvador. (*Id.* ¶ 32; *see also* Resp. Ex. 2 ("June 3, 2015 IJ Decision"), at 6.)

Petitioner appealed the IJ's decision to the BIA. (Teamer Decl. ¶ 33.) Subsequently, the BIA issued a briefing schedule, directing both parties to submit their briefs by August 31, 2015. (*Id.* ¶ 34.) Upon Petitioner's counsel's request, the BIA granted an extension and directed the parties to file their briefs by September 21, 2015. (*Id.* ¶ 35.) Around September 3, 2015, the BIA issued a notice rejecting Petitioner's appeal because the BIA could not determine what Petitioner intended to appeal. (*Id.* ¶ 36; *see also* Resp. Ex. 6, at 1.) The BIA allowed Petitioner 15 days from the date of the notice, or by September 18, 2015, to resubmit a corrected appeal. (Resp. Ex. 6, at 1.) Petitioner's appeal was still pending before the BIA as of September 24, 2015. (Teamer Decl. ¶ 37.)

## II. STATEMENT OF JURISDICTION

Under 28 U.S.C. § 2241, federal courts are authorized to hear cases in which an alien claims that he or she is being detained in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

### A. Detention After a Final Order of Removal

The key question in this matter is whether there is a final order of removal in Petitioner's removal proceeding. Such an order would allow this Court to consider

4

Petitioner's claim that his continued detention is unconstitutional under *Zadvydas*. As explained below, because no final order of removal has been entered, Petitioner's claim for relief under *Zadvydas* is premature.

Title 8 U.S.C. Section 1231 governs the detention of aliens after administrative orders of removal have been entered. "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). The "removal period" is the 90-day period of time that follows the entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). Usually, if an "alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Detention may continue, however, "beyond the removal period" for inadmissible or criminal aliens. 8 U.S.C. § 1231(a)(6).

This statute and the Constitution do not permit indefinite detention. Section 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court has recognized a period of six months of detention as presumptively reasonable under § 1231(a)(6). *Id.* at 701.

> Thus, under *Zadvydas*, an alien detained while awaiting removal cannot obtain habeas relief from continued confinement unless he meets a two prong standard. The alien must show (i) that he is being held beyond the presumptively reasonable six-month period, and (ii) that there is no significant likelihood of removal in the foreseeable future.

*Menghua Wan v. Crawford*, No. 1:13CV1473 (JCC/TRJ), 2014 WL 970180, at *3 (E.D.Va. Mar. 12, 2014) (citing *Phillippe v. Willett*, No. 1:08cv1167 (JCC), 2009 WL

5

416053, at *4 (E.D.Va. Feb. 18, 2009)). If the alien makes these *prima facie* showings, the burden shifts to the government to provide evidence in rebuttal. *See Zadvydas*, 533 U.S. at 701.

Commencement of the removal period is governed by 8 U.S.C. § 1231(a)(1)(B). Under that provision,

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Only subsection (i) is applicable here. An order of removal becomes final in accordance with 8 [C.F.R. §] 1241.1." 8 C.F.R. § 241.1. That regulation states:

> An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final:
> (a) Upon dismissal of an appeal by the Board of Immigration Appeals;
> (b) Upon waiver of appeal by the respondent;
> (c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
> (d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
> (e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
> (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney General, or

>upon overstay of the voluntary departure period granted or reinstated
>by the Board or the Attorney General.

8 C.F.R. § 1241.1. Here, only § 1241.1(a) is relevant to the Court's analysis.[3]

No final order of removal has been entered in Petitioner's case. As noted above, on September 23, 2014, the IJ issued a written decision denying Petitioner's application for relief under the CAT and ordering that Petitioner be removed to El Salvador. (Teamer Decl. ¶ 18; *see also* Sept. 23, 2014 IJ Decision at 11.) Subsequently, on December 18, 2014, the BIA issued a written decision remanding the matter to the IJ "for a new written decision with additional factual findings and analysis." (Teamer Decl. ¶ 21; *see also* Dec. 18, 2014 BIA Decision at 4.) On June 3, 2015, the IJ issued a new written decision, again denying Petitioner's application for deferral of removal under the CAT and ordering that he be removed to El Salvador. (Teamer Decl. ¶ 32; *see also* June 3, 2015 IJ Decision at 6.) Petitioner's appeal of that decision is still pending before the BIA. (Teamer Decl. ¶ 37.)

Petitioner cites *Pierre v. Holder*, 738 F.3d 39, 47 (2d Cir. 2013), *Batubara v. Holder*, 733 F.3d 1040, 1042–43 (10th Cir. 2013), and *Almutairi v. Holder*, 722 F.3d 996, 1001 (7th Cir. 2013) in support of his argument that a final order of removal has been entered. (§ 2241 Pet. 4.) In *Pierre*, the BIA had "affirmed the IJ's determination of Pierre's removability, but reversed the IJ's denial of relief under CAT." 738 F.3d at 47. The United States Court of Appeals for the Second Circuit found that the BIA's order

---

[3] Petitioner did not waive his appeal, and he filed an appeal within the time allotted. Furthermore, nothing in the record suggests that Petitioner's matter has been certified to either the Board or the Attorney General. Moreover, the IJ did not order Petitioner removed in Petitioner's absence, and Petitioner has not been granted voluntary departure.

7

was a final order of removal because "deferral of removal under CAT offer[ed] Pierre only limited protection from removal, lasting only until such time, if any, as the threat of torture is removed; the denial of Pierre's claim of citizenship, however, which if accepted would permanently protect him from removal, reaffirms his removability, and thus constitutes an order of removal that we may review." *Id.* In *Batubara*, the parties, in their briefing, agreed that the BIA's order "was not a final order of removal because petitioners were not actually removable pending the IJ's decision regarding voluntary departure." 733 F.3d at 1042. The United States Court of Appeals for the Tenth Circuit disagreed, concluding that the order was a final order of removal because "neither the IJ's voluntary departure advisals, nor any IJ order on remand relating to voluntary departure, could alter the BIA's decision upholding the IJ's finding of removability and denial of petitioners' requests for asylum, withholding of removal, and CAT relief." *Id.* (citation omitted). In *Almutairi*, the United States Court of Appeals for the Seventh Circuit noted that "an order from the BIA resolving everything except an issue relating to voluntary departure satisfies the finality rules of the INA." 722 F.3d at 1001 (citations omitted).

However, *Batabura* and *Almutairi* are easily distinguishable from Petitioner's matters, as both of those concerned voluntary departures rather than claims for relief under *Zadyvdas*. Moreover, the Court finds the Second Circuit's reasoning in *Pierre* to be unpersuasive as it cannot be reconciled with pertinent Fourth Circuit precedent. The United States Court of Appeals for the Fourth Circuit has held that an order of removal "becomes final 'upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is

8

permitted to seek review of such order by the Board of Immigration Appeals.'" *Alam v. Holder*, 546 F. App'x 121, 122 (4th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(47)(B)).[4] In *Alam*, the Fourth Circuit noted that "the [BIA] remanded to the [IJ] for consideration of Alam's request for withholding of removal or protection under the Convention Against Torture. Unlike a remand for solely a voluntary departure determination or designation of a country of removal, the remand in this case potentially affects the underlying removal order." *Id.* Here, the issue of whether Petitioner can be removed to El Salvador without a probability that he will more likely than not be tortured remains unresolved because Petitioner's appeal is still pending before the BIA. Without resolution, ICE simply cannot remove Petitioner to the country of removal—El Salvador—designated by the IJ.

In sum, because the BIA has not yet taken action on Petitioner's appeal, there is no final order of removal in Petitioner's matter to satisfy 8 C.F.R. § 1241.1(a). *See Id.* Given this, Petitioner is not in custody pursuant to a final order of removal, and his claim for relief under *Zadvydas* is premature. *See Tshiteya v. Crawford*, No. 1:13CV894 (JCC/IDD), 2013 WL 6635096, at *3–4 (E.D.Va. Dec. 16, 2013); *cf. Ali v. Barlow*, 446 F. Supp. 2d 604, 609–10 (E.D.Va. 2006) (finding petitioner's *Zadvydas* claim to be premature because the six-month presumptively reasonable period had not yet expired).

---

[4] Unlike in *Alam*, the Second Circuit in *Pierre* did not address whether the order of removal at issue was a final order of removal pursuant to 8 U.S.C. § 1101(a)(47)(B).

### B. Petitioner Is Not Unreasonably Detained

Moreover, even if Petitioner were held under a final order of removal, his continued detention is constitutional. Here, Petitioner has taken several actions that have delayed the administrative process. For example, on April 10, 2014, Petitioner's first attorney withdrew from the case. (Teamer Decl. ¶ 14.) On April 23, 2014, Petitioner's new attorney asked for a continuance because he had just received Petitioner's file. (*Id.* ¶ 15.) On May 29, 2014, counsel requested a continuance to retain a new expert. (*Id.* ¶ 16.) On September 3, 2015, the BIA rejected Petitioner's appeal because the BIA could not determine what Petitioner intended to appeal. (*Id.* ¶ 36.) As of September 24, 2015, Petitioner had not yet submitted the corrected appeal. (*Id.* ¶ 37.) Clearly, Petitioner's own actions have contributed significantly to the delay in his removal and his continued detention. *See Menghua Wan*, 2014 WL 970180, at *4 (holding that "[a]ny delays in [the petitioner's] departure—and, as such, any continuation of his detention—were caused by [the petitioner']s request for a stay from the First Circuit" (citing *Obikanye v. I.N.S.*, 78 F. App'x 769, 772 (2d Cir. 2003))).

Additionally, Petitioner fails to demonstrate there is no significant likelihood of removal in the foreseeable future. *Zadvydas*, 533 U.S. at 701. Notably,

> [c]ourts have found that removal was not 'reasonably foreseeable' in situations where no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time.

*Tshiteya*, 2013 WL 6635096, at *4 (citing *Nima v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D.Pa. 2003)). Those circumstances are not present here. By contrast, Petitioner's deportation has been delayed for further consideration of his claim for deferral of removal under the CAT; if the BIA affirms the IJ's decision denying him CAT relief, Petitioner stands to be promptly deported to El Salvador.[5] Accordingly, even if Petitioner were subject to a final order of removal, the Court finds that his detention is not unreasonable. *See id.* (rejecting similar claim).

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2241 Petition (ECF No. 1) will be denied. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Nov. 16, 2015
Richmond, Virginia

---

[5] The Government notes that "travel document issuance from the El Salvador Consulate in Washington, DC occurs quickly, usually within days of the request." (Teamer Decl. ¶ 40.) Moreover, "[t]here are scheduled weekly ICE Air flights to El Salvador." (*Id.* ¶ 41.)

11